# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Health,                          :
                          Petitioner           :
                                               :
            v.                                 :      No.  585 C.D. 2021
                                               :      Submitted:  January 21, 2022
William Capouillez (Office of                  :
Open Records),                                 :
                          Respondent           :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: November 16, 2022


The Department of Health (Department) petitions for review of the Final Determination issued by the Office of Open Records (OOR) that granted in part and denied in part William Capouillez's (Requester) appeal from the decision of the Department denying Requester's Right-to-Know Law[1] (RTKL) request.  Requester sought certain records relating to the Department's actions in response to COVID-19 mitigation orders and compliance measures regarding all gyms and fitness centers in Mifflin County, Pennsylvania (Request).  The Department denied the Request, asserting that the responsive records are confidential under the Disease Prevention and Control Law of 1955[2] (DPCL) and exempt from disclosure under the noncriminal investigation exception set forth in Section 708(b)(17) of the RTKL, 65

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] Act of April 23, 1956, P.L. (1955) 1510, 35 P.S. §§ 521.1-521.21.

P.S. § 67.708(b)(17). The OOR concluded that while some of the records are exempt from disclosure, others were not protected by either the DPCL or the RTKL, or are disclosable pursuant to Section 2805-11 of the Act of July 27, 2020, P.L. 702, No. 77 (Act 77), 71 P.S. § 720.305.[3] On appeal, the Department argues the OOR erred in concluding that the records ordered disclosed are not exempt under the DPCL or that Act 77 operated to make records that are otherwise exempt from disclosure subject to disclosure, and that the Department did not meet its burden of proving that Section 708(b)(17) applied. For the reasons that follow, we affirm.

## I. BACKGROUND

*A. The Request and Denial*[4]

On December 17, 2020, Requester filed the Request, which the Department received on December 23, 2020, in which Requester sought

> [a] copy of all records and supporting Departmental policy and guidance pertaining to all transactions and activity taken by the [] Department . . . relative to the COVID-19 Orders and those compliance measures undertaken by the Department regarding all gyms and health & fitness centers located in Mifflin County P[ennsylvania] within the last 12 months. To include[,] but not limited to: all complaints received, Department letters and citations sent to M.R. Stax . . . and Lewistown Health & Fitness Center . . . .

(Reproduced Record (R.R.) at 003, 007.)[5] After obtaining a 30-day extension to respond, the Department's Open Records Officer (AORO) issued a letter on

---

[3] Act 77 amended the Act of April 9, 1929, P.L. 177, known as the Administrative Code of 1929, providing for access to records during a disaster declaration.

[4] The Request, the Department's Open Records Officer's response, and Requester's appeal are found at Item 1 of the Certified Record and pages 001-008 of the Reproduced Record.

[5] The page numbers of the Department's Reproduced Record do not include the small "a" required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 ("[T]he pages of . . .
**(Footnote continued on next page…)**

2

February 1, 2021, denying the Request. The Department asserted, among other reasons, that the records sought are exempt from public disclosure under: (1) the noncriminal investigation exception set forth in Section 708(b)(17) of the RTKL; and (2) Section 102(2) of the RTKL because the records are confidential pursuant to Section 15 of the DPCL, 35 P.S. § 521.15.[6] (*Id.* at 003-004.) The Department indicated that the records are part of epidemiological investigations, which are "an exercise of the Department's authority to conduct a noncriminal investigation." (*Id.* at 5.) Requester filed a timely appeal of the denial to the OOR. (*Id*. at 001-002.)

### B. *Appeal to the OOR*

#### 1. Department's Position Statement & Affidavit

In support of its denial, the Department submitted an affidavit of Sharon Watkins, Ph.D., the Director of the Department's Bureau of Epidemiology (Bureau), and legal argument contending that the records sought are exempt under the DPCL and the RTKL.[7] Specifically, the Department argued that pursuant to Section 102 of the RTKL, records that are exempt under state law or regulation are not included in the definition of public records. (*Id*. at 019.) The Department asserted that, with limited exceptions, it does not have the authority to release any information it obtains

---

the reproduced record . . . shall be numbered separately in Arabic figures . . . thus, 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc."). For consistency of reference, the citations used are as reflected in the Reproduced Record.

[6] The AORO also denied the Request, asserting that the requested documents "would disclose individually identifiable health information" and are, thus, exempt from disclosure under Section 708(b)(5) of the RTKL, 65 P.S. § 708(b)(5); include records "which would disclose personal identification information" and are, therefore, exempt under Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(6)(i)(A); and the records were withheld as being attorney work-product under Section 305 of the RTKL, 65 P.S. § 67.305. (R.R. at 003-005.) These alternative reasons for denying the Request are not at issue in the present appeal.

[7] The Department's initial submission is found at Item 3 of the Certified Record and pages 015-027 of the Reproduced Record.

in the course of furthering the DPCL. (*Id.*) The Department argued that it is allowed to disclose information that would otherwise be confidential under the DPCL when "the Department determines that disclosure would further the purpose of the [DPCL], which is to prevent and control the spread of disease, and for research purposes, subject to strict supervision by health authorities," and "if the individual who is the subject of the information provides written authorization that the information can be disclosed." (*Id.* at 020 & n.2.) Thus, the Department argued that the DPCL prohibits disclosure of information except in very limited circumstances and that improper disclosure of information protected under the DPCL is a summary offense. (*Id.* (citing Section 20 of the DPCL, 35 P.S. § 521.20).) The Department further asserted that the requested records are protected under the DPCL because they are "maintained by the Department as a result of investigating the COVID-19 pandemic, a disease or condition reportable under the Communicable and Non-communicable Diseases Regulations promulgated pursuant to the DPCL." (*Id.*) Thus, the Department argued the records are protected from disclosure pursuant to the DPCL.

The Department also argued that the requested records are protected under the noncriminal investigation exception under Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17). (*Id.* at 022.) The Department argued that, based on the definition of "record," the information that is contained in a complaint that is received by an agency is exempted from disclosure and is, therefore, not a "public record." (*Id.* (citing *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1184 (Pa. Cmwlth. 2010) (Friedman, S.J. concurring)).) Thus, the Department contended that the requested records are also protected under the noncriminal investigation exception of the RTKL.

4

The Department also submitted Dr. Watkins' affidavit. Therein, Dr. Watkins attested to the purpose and role of the Bureau under the DPCL, which include surveillance and investigation of diseases; consultation with and providing guidance to health professionals, county boards of health, other government agencies, and the public; and making recommendations on disease control and prevention. (R.R. at 024-025.) As to the Request, Dr. Watkins stated:

10. The records requested in the instant case deal with the Department's epidemiological investigation regarding a disease or condition reportable under the Communicable and Non-communicable Diseases Regulations promulgated pursuant to the DPCL. *See* [Sections 2(k), 3, 4, 5 of the DPCL,] 35 P.S. §§ 521.2(k) (definition of "reportable disease"), 521.3 (relating to responsibility for disease prevention and control), 521.4 (reports)[,] and 521.5 (control measures)[,] and 28 Pa. Code § 27.3 (relating to reporting outbreaks and unusual diseases, infections and conditions).

11. Specifically, the records requested in the instant case involve the 2019 novel coronavirus (COVID-19), a highly contagious virus characterized as a pandemic by the World Health Organization on March 11, 2020. Since approximately January 2020, in conjunction with numerous federal agencies and various state agencies and organizations, the focus of the Bureau has been to effectively manage and prevent the spread of COVID-[19.]

12. The rapid spread of COVID-19, coupled with the pace and volume of data and information accompanying the pandemic response, necessitated that the Bureau receive and distribute information through program areas that may normally not be tasked with doing so. Although the Bureau has led the epidemiological response, numerous areas within the Department have provided pivotal support.
. . . .
15. Any information regarding the Department's epidemiological investigation constitute records received, created or maintained by the Department pursuant to the Department's authority under the DPCL and are, therefore, confidential under the DPCL.

16. The records may be released only if the Department deems release necessary to prevent and control the spread of disease.

5

17. The Department has released all records currently deemed necessary to prevent and control the spread of disease at: [a link to a website].

(R.R. at 024-027.)

## 2. Requester's Response

Requester responded to the Department's position statement and Dr. Watkins' affidavit, arguing that there would be, in existence, some records that would not breach confidentiality provisions and "would be applicable as to how the Department reacted to the COVID-19 epidemic and what control measures and preventative procedures [it] developed." (*Id.* at 028.)[8] Requester further argued that not all of the records given to the Department as they relate to its approach to the COVID-19 pandemic compliance measures breach the confidentiality provisions or "meet the definition of not being deemed necessary to prevent and control the spread of the disease." (*Id.*) In response to the Department's contention that it had released all records it deemed necessary for the prevention and control of the spread of COVID-19, Requester maintained that it is not incumbent upon him to "sort through an entire website and an ominous volume of narratives, references, and documents and make a determination as to what information is actually derived from written Departmental guidance, policy, standard operating procedures or directives" as related to the Bureau and the Department meeting their "overarching role with regard to COVID-19." (*Id.* at 029 (emphasis omitted).)

---

[8] Requester's response is found at Item 4 of the Certified Record and pages 028-029 of the Reproduced Record.

6

### 3. Department's Supplemental Response

At OOR's request, the Department submitted a supplemental response with a privilege log and attestation from its AORO.[9] In its supplemental response, the Department argued that its interpretation of the Request is reasonable. Specifically, the Department interpreted the Request as "seek[ing] a single group of documents as pertaining to complaints, citations, records and guidance specifically involving gyms in Mifflin County." (*Id.* at 036.) Based on the language of the Request itself, the Department maintained that its interpretation, rather than the OOR's apparent interpretation that the Request involved two categories, the first generalized as to the Department's policy and guidance, and the second related to specific complaints and citations about gyms in Mifflin County, is reasonable, but, under either interpretation, its withholding of the records pursuant to the DPCL is proper. (*Id.*) Additionally, the Department contended that the records are exempt from disclosure pursuant to Section 305 of the RTKL, 65 P.S. § 67.305, because they are privileged under the attorney work-product doctrine. (*Id.*) As to any complaints, the Department also argued that the complainants have a constitutional right to privacy under *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142, 158 (Pa. 2016) (*PSEA*), and those privacy interests outweighed the public benefit achieved through the disclosure of the records sought. (*Id.* at 036-037.)

The Department reasserted its arguments that the records are exempt from disclosure under both the DPCL and Section 708(b)(17) of the RTKL. With respect to the noncriminal investigation exception, the Department argued that it has statutory authority pursuant to the DPCL and Section 2102(a)-(b) of the

---

[9] The Department's supplemental response is found at Item 7 of the Certified Record and pages 033-046 of the Reproduced Record.

Administrative Code of 1929, 71 P.S. § 532(a)-(b), to conduct an epidemiological investigation, which is a noncriminal investigation. (*Id.* at 039.) Thus, the Department maintained that "any complaint submitted to the Department regarding the business closure order is a complaint related to the Department's authority to conduct epidemiological investigations and issue disease control measures and is[,] thus[,] not a public record under the RTKL." (*Id.* (footnote omitted).) With respect to the confidentiality provision of the DPCL, the Department argued that any document received or maintained pursuant to the DPCL is protected by the strict confidentiality provision contained therein. (*Id.*) The Department maintained that the requested records are "records which would be maintained pursuant to t[he DPCL] because they are records related to a disease control measure" and, therefore, covered by the DPCL's prohibition on disclosure and not public records under Section 102 of the RTKL. (*Id.* at 040 (citing 65 P.S. § 67.102).)

Finally, the Department argued that Act 77 did not apply to make the requested records disclosable. (*Id.*) The Department explained that only certain otherwise exempt records are public under Act 77, as set forth in Section 305 of Act 77, 71 P.S. § 720.305, subject to the Section 708(b) RTKL exceptions. (*Id.*) Relying on its privilege log and the AORO's attestation, which indicated that the named record was not public under Act 77, the Department argued that Act 77 was not implicated. (*Id.* at 040-041.) The privilege log reflects: the Bates numbers of the 15 records responsive to the Request; a description of the records in the form of the records' name; the legal bases for the exclusion, citing Section 15 of the DPCL, Section 305 of the RTKL for attorney work-product, and/or Section 708(b)(17) of the RTKL for the noncriminal investigation; and whether the document was a "Public Record under Act 77 of 2020," which listed each document as "No." (*Id.* at

8

042-045.) In relevant part, the AORO attested that "[e]ach of the responsive records withheld are described in the . . . [privilege] log" and "[n]one of the withheld records constitute public records within the meaning of Act 77 of 2020." (*Id.* at 046.)

### 4. Requester's Supplemental Response

Requester responded to the Department's submissions, arguing that, because many of the complaints were anonymous, no privacy interest attached as the people did not provide their name, address, or phone number.[10] (*Id.* at 049.) Requester further argued that the fact that the Department admits that these records, including complaints, exist shows they are a part of the workings of government of which the public should be informed. If they are not provided, Requester asserted, there would be no way of knowing whether there was actually an issue of a business's noncompliance with the Department's COVID-19 mitigation orders. (*Id.* at 049-050.) With respect to the noncriminal investigation exception, Requester argued that, while the Department admitted in the privilege log that investigations were occurring, there was no information that could be used to discern how the investigations were conducted or to identify "any criminal investigation and compliance records, or fines and incarceration processes as referenced via a formal reprimand letter," which Requester maintained were in his possession. (*Id.* at 050.) Accordingly, Requester asserted that the Department has public records that are subject to disclosure under the RTKL. (*Id.* at 052.)

---

[10] Requester's supplemental response is found at Item 8 of the Certified Record and pages 048-052 of the Reproduced Record.

5. <u>OOR's Final Determination</u>[11]

On April 26, 2021, the OOR issued its Final Determination granting Requester's appeal in part and denying it in part. The OOR found that the Department failed to meet its burden in proving that the noncriminal investigation exception applied. In doing so, the OOR explained that the affidavits of both Dr. Watkins and the AORO did "not address its noncriminal investigations as required under Section 708(b)(17) of the RTKL" and that "[the Department's] unsworn statements in its position statement may not be relied upon as competent evidence to withhold records under the RTKL." (OOR's Final Determination at 5 (citing *Housing Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012)).) The OOR also determined that, of the 13 records claimed in the privilege log to be confidential pursuant to Section 15 of the DPCL, the Department did not establish that a final draft of a checklist for mitigation and enforcement (Final Checklist) and 4 drafts of the checklist for mitigation and enforcement (Draft Checklists) are covered by the DPCL's confidentiality provision. (*Id.* at 9-10.) Instead, the OOR concluded that

> the checklist for mitigation and enforcement appear[ed] to be a tool or form used by the Department in carrying out its duty under the DPCL, but does not appear to be "reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to the [DPCL] or any regulations."

(*Id.* (citing 35 P.S. § 521.15).) In contrast, the OOR held that "Spreadsheet[s] of COVID business complaint[s] form response data" for six time periods (Spreadsheets), a May 11, 2020 email complaint (Complaint), and a

---

[11] The OOR's Final Determination is found at Item 9 of the Certified Record, pages 054-068 of the Reproduced Record, and as an attachment to the Department's brief.

10

"[w]arning/notification letter of receipt of complaint dated May 22, 2020," (Warning Letter), are maintained pursuant to the Department's authority under the DPCL. (*Id.* at 9-10.)

However, the OOR did not end its analysis because Act 77 could make certain records that are otherwise exempt from disclosure public during a disaster declaration, subject to Section 708 of the RTKL. (*Id.* at 10.) While the OOR agreed that, based on the attestation of Dr. Watkins and the privilege log submitted by the Department, some of the records are protected under the DPCL, the OOR concluded that six Spreadsheets may be subject to Act 77. (*Id.* at 11.) Based on its application of Act 77 to those records, the OOR determined that, because the Spreadsheets "contain data of complaints relating to the compliance of these businesses [in Mifflin County], Act 77 makes such 'data,' used to implement policies or actions taken in relation to a disaster declaration, public information." (*Id.* at 11-12.) The OOR rejected the AORO's affidavit because the AORO merely stated that Act 77 did not apply, which was "insufficient to meet the Department's burden of proof." (*Id.* at 12.) Accordingly, the OOR concluded that the Spreadsheets are subject to disclosure pursuant to Act 77.

The OOR last addressed the claims of attorney work-product and whether redactions would be permitted. On the first issue, the OOR concluded that the Department could withhold a "Draft of checklist for mitigation and enforcement with commentary from legal staff" and a "Draft memorandum between D[epartment] legal staff regarding enforcement authority under the DPCL with commentary" under the attorney work-product doctrine. (*Id.*) On the second issue, the OOR held that the Department could redact the names of complainants from the Spreadsheets, as the names were protected pursuant to *PSEA*. (*Id.* at 13.)

11

Based on these determinations, the OOR directed the Department to provide Requester the Final Checklist, Draft Checklists, and Spreadsheets, subject to redaction of any complainants' names. (*Id.* at 15.) The Department now petitions this Court for review of the OOR's Final Determination.[12]

## II. DISCUSSION

### A. *General Legal Principles*

Under the RTKL, Commonwealth agencies are required to "provide public records" to requesters "in accordance with [the RTKL]." Section 301(a) of the RTKL, 65 P.S. § 67.301(a). The term "public record" is defined as "[a] record, including a financial record, of a Commonwealth . . . agency that (1) is not exempt under [S]ection 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. Records possessed by a Commonwealth agency are presumed to be public records, but this "presumption shall not apply if: (1) the record is exempt under [S]ection 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." 65 P.S. § 67.305(a). The Commonwealth agency has the burden of proving, by a preponderance of the evidence, that the record is exempt from public access. 65 P.S. § 67.708(a)(1). Thus, the Department bears the burden of proving that the requested records are not public records disclosable under the RTKL because either the DPCL precludes disclosure or the records are exempt under Section 708 of the RTKL.

---

[12] "[A] reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency," and "[is] entitled to the broadest scope of review." *Bowling v. Off. of Open Recs.*, 990 A.2d 813, 818, 820 (Pa. Cmwlth. 2010) (*en banc*), *aff'd*, 75 A.3d 453 (Pa. 2013).

12

### B. Department's Arguments[13]

On appeal, the Department argues[14] that the OOR erred in failing to conclude that the records ordered disclosed are confidential and not disclosable pursuant to the DPCL and its associated regulations, and, therefore, are not public records under Section 102 of the RTKL.[15] The Department asserts that Section 15 of the DPCL prevents disclosure of not only reports of diseases, but also "'any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to this act or any regulations.'" (Department's Brief (Br.) at 23 (quoting 35 P.S. § 521.15) (emphasis omitted).) According to the Department, the disclosure of records under Section 15 of the DPCL falls within its judgment, and the OOR erred in substituting its judgment for that of the Department. With respect to the Final Checklist and Draft Checklists, the Department argues that the OOR recognized that they are "a tool or form used by the Department **in carrying out its duty under the DPCL**[,]" but nonetheless concluded that those records "do not appear to be records that would be covered by the DPCL," which reflected a disregard of the plain language of Section 15 of the DPCL and Dr. Watkins' affidavit. (*Id.* at 25-26 (emphasis in original).) As for the Spreadsheets, the Department asserts that the OOR recognized that these records are covered by the DPCL, but erred in concluding that Act 77 compelled the release of the records. The Department contends that Act 77 does not preclude "an agency from invoking, as appropriate, the existing exemptions in Section 708 of the RTKL." (*Id.* at 30-31

---

[13] Requester was precluded from filing a brief due to failing to comply with the Court's October 5, 2021 order, that required him to file a brief within 14 days of the date of that order.

[14] The Department lists the Complaint and Warning Letter as being two of the records at issue. (*See* Department's Br. at 5.) However, the OOR did not order these to be disclosed. (*See* Final Determination at 15.)

[15] We have reorganized the Department's arguments.

(internal quotations omitted; footnote omitted).)  The Department contends that because the Spreadsheets are exempt under Section 708(b)(17), they are not disclosable under Act 77, and the OOR erred in concluding otherwise.  (*Id.* at 31-32.)

The Department further asserts that all of the records ordered disclosed are exempt from disclosure under the noncriminal investigation exception set forth in Section 708(b)(17) of the RTKL.  Specifically, the Department contends that the OOR erred in finding the affidavits of Dr. Watkins and its AORO insufficient to support the application of this exception where those affidavits were found to be sufficient for DPCL purposes.  (Department's Br. at 14-16.)  The Department argues that the privilege log's description of the records made it clear that the records were related to the Department's ongoing, noncriminal investigation of noncompliance with the COVID-19 mitigation orders, which fell within the Department's statutory authority.  (*Id.* at 16-17 (citing *Dep't of Health v. Off. of Open Recs.*, 4 A.3d 803 (Pa. Cmwlth. 2010)).)  Even if the affidavits are insufficient, the Department maintains that the OOR still erred in finding this exception inapplicable because the existence of the Department's noncriminal investigations, and the relationship of these records thereto, is apparent from the face of the record or is not in dispute.  (*Id.* at 17-18 (citing *Off. of Governor v. Davis*, 122 A.3d 1185 (Pa. Cmwlth. 2015)).)  This error is further demonstrated, the Department contends, by the OOR's deviation in this matter from its past decisions, which "recognized the precise noncriminal investigative powers of the Department implicated by the records at issue in the instant appeal," for the same or similar records.  (*Id.* at 19-20 (citing *Mastriano v. Pa. Dep't of Health*, Pa.Off.Open Rec. Docket No. AP 2020-1496, 2020 WL 6261478 (Final Determination filed Oct. 21, 2020); *Upson v. Pa. Dep't of Health*,

14

Pa.Off.Open Rec. Docket No. AP 2020-0972, 2020 WL 4734761 (Final Determination filed Aug. 12, 2020)).) Thus, the Department contends that the OOR erred in determining that the noncriminal investigation exception does not apply to the requested records. (*Id.* at 18, 21.)

*C. Analysis*

Section 102 of the RTKL excludes from the definition of "public records" records which are "exempt from being disclosed under any other Federal or State law . . . ." 65 P.S. § 67.102. The Department argues that the OOR erred in concluding that the Final Checklist and Draft Checklists are not exempt under the DPCL, and, therefore, these records are not public records as defined by the RTKL. We disagree.

The DPCL addresses the prevention and control of diseases in the Commonwealth. Section 4 of the DPCL requires that all communicable and non-communicable diseases be reported to the Department. 35 P.S. § 521.4. "Upon the receipt . . . by the [D]epartment . . . of a report of a disease which is subject to isolation, quarantine, or any other control measure, . . . the [D]epartment shall carry out the appropriate control measures in such manner and in such place as is provided by rule or regulation." Section 5 of the DPCL, 35 P.S. § 521.5; *see also* 28 Pa. Code § 27.60 (relating to disease control measures). The Administrative Code also addresses the public health concerns and vests the Department with, *inter alia*, the following authority:

(a) To protect the health of the people of this Commonwealth, and to determine and employ the most efficient and practical means for the prevention and suppression of disease;

(b) To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that

15

purpose, without fee or hindrance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the [D]epartment to enter, examine and survey such grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables.

71 P.S. § 532(a)-(b). Section 15(a) of the DPCL, which governs the confidentiality of reports and records, provides:

> (a) State and local health authorities may not disclose reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to th[e DPCL] or any regulations, to any person who is not a member of the [D]epartment or of a local board or department of health, except as follows:
>
> (1) Where necessary to carry out the purposes of this act.
>
> (2) Where necessary to inform the public of the risk of a communicable disease.

35 P.S. § 521.15(a). Thus, reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to the DPCL, are confidential and subject to release in very limited circumstances.

The OOR concluded that the Final Checklist and Draft Checklists are not covered by Section 15(a) of the DPCL. (Final Determination at 9.) The OOR reasoned that these checklists are not "reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to th[e DPCL] or any regulations," which would fall under Section 15(a), but are "tool[s] or form[s] used by the Department in carrying out its duty under the DPCL." (*Id.* at 9-10.) We agree with the OOR that the Final

16

Checklist and Draft Checklists are not protected under Section 15(a) of the DPCL. Neither the affidavits nor the privilege log provided by the Department explain how these Checklists fit within the confidentiality provision of the DPCL. Without a description of the Checklists or an explanation as to why they are confidential, the Court cannot conclude that the OOR erred in determining that they are not covered under the DPCL. *See Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017) (holding that a conclusory affidavit, without more, is not sufficient for the agency to sustain its burden of proving the responsive records were exempt from disclosure).

In contrast, the OOR determined that the Spreadsheets are records subject to Section 15(a) of the DPCL, a result not challenged by the Department or Requester.[16] (Final Determination at 10.) Instead, the Department challenges the OOR's conclusion that, despite Section 15(a) of the DPCL applying to the Spreadsheets, Act 77 operates to make the Spreadsheets disclosable based on its determination that the Department did not establish that the noncriminal investigation exception set forth in Section 708(b)(17) of the RTKL applied, a conclusion the Department also asserts was in error.

Act 77 amended the Administrative Code to provide for certain categories of records to be considered "public" during a disaster declaration issued pursuant to Section 7301(c) of the Emergency Management Services Code, 35 Pa.C.S. § 7301(c). Section 2805-H of the Administrative Code of 1929 provides, subject to Section 708 of the RTKL, the following is considered a public record during a disaster declaration:

---

[16] Because neither the Department nor Requester challenged the OOR's determination that the Spreadsheets are records subject to Section 15(a) of the DPCL, that determination is not before the Court for review.

17

(1) **Data used by a Commonwealth agency** for any rules, policies or action taken by the Commonwealth agency in relation to a disaster declaration.

(2) The process by which a Commonwealth agency determines how the Commonwealth agency will collect the data used by the Commonwealth agency for any rules, policies or actions taken by the Commonwealth agency in relation to a disaster declaration.

(3) Any quantitative or predictive models based on the data collected by a Commonwealth agency which are then used by the Commonwealth agency for any rules, policies or actions taken by the Commonwealth agency in relation to a disaster declaration.

71 P.S. § 720.305 (emphasis added). Under its plain language, the applicability of Act 77 – that is, a confidential record will become a public record during a disaster declaration, is subject to Section 708 of the RTKL, which authorizes Commonwealth agencies to establish that a record is exempt from disclosure if the record falls into an enumerated exception.

The OOR, in its Final Determination, concluded that the Spreadsheets are subject to Act 77. (Final Determination at 11.) The OOR explained Act 77 could apply because "the responsive spreadsheets contain data of complaints relating to the compliance of these businesses" to the COVID-19 orders, which made the Spreadsheets "'data,' used to implement policies or actions taken in relation to a disaster declaration, public information." (*Id.* at 11-12.) The OOR concluded that the affidavits provided, which merely stated that Act 77 did not apply, are insufficient to establish that the Spreadsheets should be exempt under Section 708 of the RTKL.

The Department does not argue that the OOR erred in concluding that the Spreadsheets fall within Act 77 because they constitute "data" that the Department

18

used to implement policy or take action in relation to the disaster declaration.[17] Accordingly, whether the OOR erred in applying Act 77 to the Spreadsheets is tied to whether the OOR erred in concluding that the Department failed to meet its burden of proving that the Spreadsheets, along with the Final Checklist and Draft Checklists, are exempt under Section 708 of the RTKL. If the OOR's determination that the Department failed to meet its burden of proof under Section 708 is upheld, its determination on Act 77's application to the Spreadsheets should also be upheld.

The only exception to disclosure under Section 708 of the RTKL that the Department asserts is the noncriminal investigation exception, found at Section 708(b)(17), which exempts from public disclosure:

> (i) Complaints submitted to an agency
>
> (ii) Investigative materials, notes, correspondence, and reports.
> . . . .
>
> (iv) A record that includes information made confidential by law.
> . . . .
> (vi) A record that, if disclosed, would do any of the following:
>
>> (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, . . . .

---

[17] Even if it did, we would agree with the OOR's conclusion that the Spreadsheets are "data of complaints relating to the compliance of" various businesses. (Final Determination at 11.) The plain language of Act 77 states that "[d]ata used by a Commonwealth agency for any rules, policies or actions taken by the Commonwealth agency in relation to a disaster declaration" are deemed expressly public. *See* 71 P.S. § 720.305(1). The Spreadsheets are data sets that are compiled over a period of time relating to a business's noncompliance with the business closure orders. Thus, while the Spreadsheets fall under the ambit of the DPCL, because the information is data used by the Department "for any rules, policies or actions taken by the" Department, 71 P.S. § 720.305(1), during the COVID-19 pandemic, the information is made expressly public during a disaster declaration.

65 P.S. § 67.708(b)(17)(i)-(ii), (iv), and (vi)(A). This Court has determined that the term "investigation" means "a systemic or searching inquiry, a detailed examination, or an official probe." *Dep't of Health*, 4 A.3d at 811. For this exception to apply, an agency's inquiry, examination, or official probe must be conducted as "part of the agency's official duties." *Id.* at 814. "As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties." *Id.*

The Department argues that it met its burden of proving that all of the responsive records, including the Final Checklist, Draft Checklists, and Spreadsheets that were ordered disclosed, are exempt under the noncriminal investigation exception of the RTKL because those records were created and maintained in its epidemiological investigation relating to the ongoing COVID-19 pandemic, which falls into its official duties under the DPCL. In support of its claim that the requested records were exempt, the Department provided Dr. Watkins' affidavit, in which she attested, in relevant part:

> 2. The Bureau, whose records are the focus of this RTKL request, and whose purpose is to assist in meeting the Department's assigned statutory obligations pursuant to the [DPCL] and subject to the confidentiality provisions therein . . . .
>
> 3. The role of the Bureau is to:
> - Understand disease patterns and at-risk populations
> - Identify unusual patterns of illness and injury in the Commonwealth
> - Identify causative factors for disease and injury
> - Investigate emergent public health problems
> - Develop recommendations, control measures, and preventative procedures for illness and injury
> - Evaluate the success of public health interventions and programs in reducing disease and injury incidence[.]
> . . . .

20

9. The Bureau directly conducts or indirectly supervises hundreds of disease outbreak investigations per year.

10. The records requested in the instant case deal with the Department's epidemiological investigation regarding a disease or condition reportable under the Communicable and Non-communicable Diseases Regulations promulgated pursuant to the DPCL.
. . . .
15. Any information regarding the Department's epidemiological investigation constitute records received, created or maintained by the Department pursuant to the Department's authority under the DPCL . . . .

(R.R. at 024-027.)  In addition to Dr. Watkins' affidavit, the Department provided the privilege log wherein the AORO identified 10 records, including those ordered disclosed by the OOR, as being withheld from disclosure pursuant to the noncriminal investigation exception under the RTKL.  (*Id.* at 042-046.)  However, the OOR determined that the affidavits of Dr. Watkins and the AORO "do not address [the Department's] noncriminal investigations as required under Section 708(b)(17) of the RTKL," and thus, concluded that the Department failed to meet its burden showing that this exception applies.  (Final Determination at 5.)  Upon our review of the Department's evidentiary submissions, we agree.

"Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption."  *Heavens v. Pa. Dep't of Env't Prot.*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013).  This Court has aptly stated that

> [a]ffidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied upon.  The **affidavits must be detailed, nonconclusory**, and submitted in good faith . . . .  Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

21

*Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) (emphasis added) (internal citation omitted).  Additionally, "a privilege log, which typically lists the date, record type, author, recipients, and a description of the withheld record, can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (citing *Heavens*, 65 A.3d at 1075-77).  However, the Court has cautioned that while testimonial affidavits may provide sufficient evidence in support of an exception, "conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that an" exception applies to deny access to records. *Bagwell*, 155 A.3d at 1130.

In this matter, Requester seeks "all transactions and activity taken by the [] Department . . . relative to COVID-19 Orders and those compliance measures undertaken by the Department regarding all gyms and health & fitness centers located in Mifflin County P[ennsylvania,] within the last 12 months" which includes "complaints received, Department letters and citations sent" to two specific gyms Requester identified.  (R.R. at 007.)  While Dr. Watkins attested to the records being within the ambit of the Department's statutorily granted authorities, the attestation lacks any reference to the Department's authority as it relates to the COVID-19 pandemic in particular.  Dr. Watkins attests that "[t]he records requested in the instant case deal with the Department's epidemiological investigation regarding a disease or condition reportable under the Communicable and Non-communicable Diseases Regulations promulgated pursuant to the DPCL."  (*Id.* at 026.)  The affidavit does not state, other than generally referencing the DPCL and the Department's regulations, how the requested records relate to the Department

epidemiological investigation or how such investigation relates to the asserted RTKL exception. In short, Dr. Watkins' affidavit summarizes the Department's statutory and regulatory duties without linking those duties to the requested records. The affidavit "contains no further specifics. It is, therefore, without more, not sufficient to prove that the records are exempt" under the noncriminal investigation exception of the RTKL. *Scolforo*, 65 A.3d at 1104. Additionally, the privilege log submitted by the Department simply describes the record by name and the legal basis for the exclusion by citing the claimed relevant statutory provision without any additional information. (R.R. at 042-045.) The privilege log does not provide the "date, . . . , author, recipients, [or] a description of the withheld record[s]." *McGowan*, 103 A.3d at 381. Thus, neither the affidavit nor the privilege log, either individually or taken together, is enough to satisfy the Department's burden of showing that the responsive records, and the Final Checklist, Draft Checklists, and Spreadsheets, in particular, are exempt from disclosure under Section 708(b)(17) the RTKL, and the OOR did not err in so concluding.[18] Correspondingly, as the Department did not establish that the disclosure of the Spreadsheets under Act 77 was prevented by Section 708 of the RTKL, the OOR did not err in holding that Act 77 required their disclosure subject to the redaction of the complainants' names.

---

[18] Although the Department argues the OOR's Final Determination conflicts with some of the OOR's prior opinions, we are not bound by those opinions. Further, a close review of those prior opinions reveals that the affidavits filed by the Department in those matters appear to have been more detailed and gave more specific descriptions of the responsive records and/or the bases underlying why those records were exempt as records relating to the noncriminal investigation implemented pursuant to alleged violations of business closure orders. *See Mastriano*, slip op. at 3-4; *Upson*, slip op. at 4-5.

23

## III. CONCLUSION

Based on the foregoing reasons, the records directed to be disclosed by the OOR – the Final Checklist, Draft Checklists, and Spreadsheets with the complainants' names redacted – are not exempt from disclosure under the DPCL, the RTKL, or Act 77. Accordingly, the OOR's Final Determination is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Department of Health,        :
            Petitioner     :
                            :
        v.              :   No.  585 C.D. 2021
                            :
William Capouillez (Office of    :
Open Records),             :
            Respondent   :

# **O R D E R**

**NOW**, November 16, 2022, the Order of the Office of Open Records, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** President Judge